# BERNADETTA KACZYNSKI *v.* DARIUSZ KACZYNSKI
## (AC 28077)

Gruendel, Alvord and West, Js.

Argued February 11—officially released September 28, 2010

*William F. Gallagher*, with whom, on the brief, was *Jacqueline F. Barbara*, for the appellant (defendant).

*Richard C. Stewart*, for the appellee (plaintiff).

*Opinion*

WEST, J. This matter is now before us on remand from our Supreme Court. The defendant, Dariusz Kaczynski, appealed from the judgment of the trial court dissolving his marriage to the plaintiff, Bernadetta Kaczynski. On appeal, the defendant claimed that the court improperly (1) found that the evidence was replete with fraudulent deeds without applying the required standard of proof to these findings, (2) made an alimony award that was not supported by evidence and the applicable law and (3) entered financial orders that unreasonably and disproportionately favor the plaintiff. See *Kaczynski* v. *Kaczynski*, 109 Conn. App. 381, 381–82, 951 A.2d 690 (2008), rev'd, 294 Conn. 121, 981 A.2d 1068 (2009). Specifically, the defendant claimed, inter alia, that the trial court "did not explicitly state or otherwise implicitly indicate whether the plaintiff had established by clear and convincing evidence that he had engaged in fraudulent transfers of property," and, therefore, the court should not have considered those transfers when distributing the marital assets. Id., 386. The majority agreed, reasoning that, although the trial court's findings had ample support in the evidence, that court nevertheless did not state what burden of proof it had applied when it concluded that the defendant had

engaged in fraudulent transfers. Id., 390. The majority concluded that the trial court was required to indicate, either explicitly or implicitly, that the findings of fraudulent transfer had been made by clear and convincing evidence but had failed to do so, and, therefore, the trial court's findings of fraud could not stand.[1] Id., 393. Following the decision of this court, the plaintiff requested and was granted certification to appeal to our Supreme Court. See *Kaczynski* v. *Kaczynski*, 289 Conn. 929, 958 A.2d 158 (2008).

Our Supreme Court reversed the judgment of this court. In so doing, the court held: "When a trial court in a civil matter requiring proof by clear and convincing evidence fails to state what standard of proof it has applied, a reviewing court will presume that the correct standard was used."[2] *Kaczynski* v. *Kaczynski*, 294 Conn. 121, 130–31, 981 A.2d 1068 (2009). The Supreme Court remanded the case to this court with direction to address the remaining issues raised by the defendant's appeal. Id., 132. After considering the defendant's remaining claims on remand, we affirm the judgment of the trial court.

The following undisputed facts and procedural history are relevant to our resolution of the defendant's

---

[1] Because this court resolved the defendant's first claim in his favor, we did not reach his other claims concerning the trial court's financial orders. *Kaczynski* v. *Kaczynski*, supra, 109 Conn. App. 382 n.1.

[2] Our Supreme Court continued: "If a party, following the rendering of the trial court's judgment, believes that the trial court potentially utilized the less stringent standard of preponderance of the evidence, that party has the burden of seeking an articulation if the decision is unclear; see Practice Book § 66-5; or reargument if impropriety is apparent; see Practice Book § 11-12; thus giving that court the opportunity to clarify the standard used or to correct the impropriety and thereby avoiding an unnecessary appeal. If, instead, the party forgoes articulation or reargument and instead chooses to raise the issue for the first time on appeal, the reviewing court will not presume error from silence as to the standard used. Consequently, if it is not otherwise clear from the record that an improper standard was applied, the appellant's claim will fail on the basis of inadequate support in the record." *Kaczynski* v. *Kaczynski*, 294 Conn. 121, 131, 981 A.2d 1068 (2009).

remaining claims. "The plaintiff and the defendant, who were married on July 17, 1993, have three minor children: a son born on February 15, 1996, and twin daughters born on March 11, 1999. At the time of the marital dissolution hearing in June, 2006, the plaintiff was thirty-nine years of age and the defendant was forty-two. The plaintiff was born and educated in Poland. She had attended college in Warsaw, Poland, for four years, and had attended Housatonic Community College in Bridgeport. She worked as a housecleaner until her first child was born. At the time of the dissolution hearing she had been working, full-time, as an accounting assistant for one year, earning $428 per week.

"The defendant, at the time of the dissolution hearing, had worked for Sikorsky Aircraft Corporation for nineteen years, earning a salary of about $60,000 (gross) a year. In its memorandum of decision, the court found that the defendant was very skillful and had obtained a significant amount of income from self-employment, such as lawn maintenance and carpentry. The defendant had been hospitalized for depression and at the time of the dissolution hearing was being treated with medication and therapy.

"The plaintiff filed an amended complaint on May 9, 2006, seeking dissolution of the marriage and adding causes of action alleging that the defendant had engaged in fraudulent transfers of marital property with members of his family; however, she did not seek to add any additional parties as defendants. On July 3, 2006, the court rendered judgment dissolving the parties' marriage on the ground of irretrievable breakdown, finding that the defendant caused the breakdown of the marriage. Although the court stated that the 'evidence is replete with fraudulent transfers, false tax returns and property deeds devoid of truth,' the court did not order a remedy to correct these fraudulent acts. Instead, the court issued several orders. The court ordered the

defendant to pay child support to the plaintiff in the amount of $237 per week and to pay the plaintiff alimony in the amount of $250 per week for seven years. Additionally, the court ordered the defendant to provide the current insurance coverage for the children and to pay 60 percent of the children's unreimbursed medical and dental expenses.

"With respect to the parties' assets, the court found that the defendant 'in complicity with his sisters sought to take financial advantage of the [plaintiff] by deceitfully clever means.' The court considered the value of the assets that the defendant transferred to his sisters 'as part of the marital assets' in making its financial orders but did not create a constructive trust for these assets. The court ordered the defendant to transfer to the plaintiff by quitclaim deed the jointly owned residence located at 31 Winfield Drive in Shelton.

"The court also issued orders concerning the parties' personal property. Those orders included a provision that the defendant's pension plan and 401 (k) plan be divided equally. The court distributed the parties' automobiles. The defendant was [awarded] the 1987 Ford pickup truck, the 1992 BMW and the 2006 Infiniti. The plaintiff was awarded the 1999 Honda. The court ordered that the plaintiff retain the household furnishings used by the plaintiff and the children and that the defendant retain any furniture that he had recently purchased. Additionally, the court ordered the defendant to contribute $25,000 to the plaintiff for attorney's fees.

"On July 12, 2006, the defendant filed a motion to reargue, which the court subsequently granted. On September 14, 2006, the court modified its July 3, 2006 judgment. The court ordered that the plaintiff pay 58 percent of the children's unreimbursed medical and dental expenses and that the defendant pay 42 percent.

The court also ordered that instead of the defendant's maintaining a $150,000 life insurance policy, he must maintain at least $81,000 in life insurance. The court vacated the household furnishings award and determined that the distribution of the furnishings would be arbitrated by attorney Stanley Goldstein. Last, the court stated that 'the court's orders in this case would be clearly undermined absent the award of attorney fees. Failure to award at least $25,000 in attorney fees will result in other necessary financial awards being affected.'" *Kaczynski* v. *Kaczynski*, supra, 109 Conn. App. 382–85.

Because the defendant's remaining claims concern the trial court's alimony and financial orders, initially we set out the applicable law and our well established standard of review. "A fundamental principle in dissolution actions is that a trial court may exercise broad discretion in awarding alimony and dividing property as long as it considers all relevant statutory criteria. . . . An appellate court will not disturb a trial court's orders in domestic relations cases unless the court has abused its discretion or it is found that it could not reasonably conclude as it did, based on the facts presented. . . . In determining whether a trial court has abused its broad discretion in domestic relations matters, we allow every reasonable presumption in favor of the correctness of its action. . . . This standard of review reflects the sound policy that the trial court has the opportunity to view the parties first hand and is therefore in the best position to assess all of the circumstances surrounding a dissolution action, in which such personal factors such as the demeanor and the attitude of the parties are so significant." (Internal quotation marks omitted.) *de Repentigny* v. *de Repentigny*, 121 Conn. App. 451, 460, 995 A.2d 117 (2010).

I

The defendant first claims that the court improperly made an alimony award that was not supported by

evidence and the applicable law. Specifically, the defendant argues that the record contained insufficient evidence to support an award of alimony when the plaintiff was earning more than she ever had previously.[3] We disagree.

At the outset, we note that the court ordered the defendant to pay the plaintiff alimony in the amount of $250 per week for seven years. It is well settled that "[i]n dissolution proceedings, the court must fashion its financial orders in accordance with the criteria set forth in General Statutes §§ 46b-81 (division of marital property), 46b-82 (alimony) and 46b-84 (child support). All three statutory provisions require consideration of the parties' amount and sources of income in determining the appropriate division of property and size of any child support or alimony award." (Internal quotation marks omitted.) *Rozsa* v. *Rozsa*, 117 Conn. App. 1, 5, 977 A.2d 722 (2009). General Statutes § 46b-82 provides in relevant part: "In determining whether alimony shall be awarded, and the duration and amount of the award, the court shall hear the witnesses, if any, of each party, except as provided in subsection (a) of section 46b-51, shall consider the length of the marriage, the causes for the . . . dissolution of the marriage . . . the age, health, station, occupation, amount and sources of income, vocational skills, employability, estate and needs of each of the parties and the award, if any, which the court may make pursuant to section 46b-81. . . ." "[Section] 46b-82 describes circumstances under which

[3] The defendant also argues that the court relied improperly on its finding that the defendant filed "false tax returns" in fashioning its alimony award because the defendant filed joint returns with the plaintiff during their marriage. We reject this argument. In so doing, we reiterate that "[i]t is within the province of the trial court, when sitting as the fact finder, to weigh the evidence presented and determine the credibility and effect to be given the evidence." (Internal quotation marks omitted.) *DuBaldo Electric, LLC* v. *Montagno Construction, Inc.*, 119 Conn. App. 423, 444, 988 A.2d 351 (2010).

a court may award alimony. The court is to consider these factors in making an award of alimony, but it need not give each factor equal weight. . . . As long as the trial court considers all of these statutory criteria, it may exercise broad discretion in awarding alimony." (Internal quotation marks omitted.) *McMellon* v. *McMellon*, 116 Conn. App. 393, 397, 976 A.2d 1, cert. denied, 293 Conn. 926, 980 A.2d 911 (2009). We note also that "[t]he trial court may place varying degrees of importance on each criterion according to the factual circumstances of each case." *Ippolito* v. *Ippolito*, 28 Conn. App. 745, 751, 612 A.2d 131, cert. denied, 224 Conn. 905, 615 A.2d 1047 (1992). "There is no additional requirement that the court specifically state how it weighed the statutory criteria or explain in detail the importance assigned to each statutory factor." *Rivnak* v. *Rivnak*, 99 Conn. App. 326, 331, 913 A.2d 1096 (2007).

In the present case, in its memorandum of decision, the court articulated that all of the evidence was considered, as well as the provisions of § 46b-82. Furthermore, on the basis of our review of the record, we conclude that the court's findings that underpin its alimony award were supported by the record. The court found that the defendant was skilled and industrious, generating a significant amount of income from carpentry and landscape side jobs that augmented his salary from Sikorsky. The court also found that the defendant was both physically and emotionally abusive to the plaintiff. It further found that his conduct was "both conspicuously offensive and flagrant and [was] the sole cause for the breakdown of the marriage." See *Sapper* v. *Sapper*, 109 Conn. App. 99, 100, 951 A.2d 5 (2008) (cause of dissolution one of statutory factors to be considered in fashioning financial orders). The court further found that the defendant had "artfully disguised his assets so that a substantial portion of his equitable estate has been reduced" and, therefore, had taken financial

advantage of the plaintiff by manipulating his assets to reduce his estate available for distribution. See *Watson* v. *Watson*, 221 Conn. 698, 708–709, 607 A.2d 383 (1992) (trial court in dissolution action may properly consider as part of marital estate property that has been fraudulently transferred even though court has chosen not to set aside transfer).

Given the court's findings, which were supported by evidence in the record, we cannot conclude that the court abused its discretion in issuing an alimony order of $250 per week for seven years. The court properly exercised its discretion in fashioning an alimony award that was supported by evidence and the applicable law.

## II

Last, the defendant claims that the court improperly entered financial orders that unreasonably and disproportionately favor the plaintiff. Specifically, the defendant argues that in awarding the plaintiff the full value of the appreciation of the marital home, one half of the defendant's retirement benefits and $40,000 in cash for the purchase of a new vehicle, the court abused its discretion. We disagree.

As noted previously, a trial court may exercise broad discretion in awarding alimony and dividing property as long as it considers all relevant statutory criteria. See *de Repentigny* v. *de Repentigny*, supra, 121 Conn. App. 460; see also part I of this opinion. "In fashioning its financial orders, the court has broad discretion, and [j]udicial review of a trial court's exercise of [this] broad discretion . . . is limited to the questions of whether the . . . court correctly applied the law and could reasonably have concluded as it did. . . . In making those determinations, we allow every reasonable presumption . . . in favor of the correctness of [the trial court's] action. . . . That standard of review reflects the sound policy that the trial court has the unique

opportunity to view the parties and their testimony, and is therefore in the best position to assess all of the circumstances surrounding a dissolution action, including such factors as the demeanor and the attitude of the parties." (Citation omitted; internal quotation marks omitted.) *Mann* v. *Miller*, 93 Conn. App. 809, 812, 890 A.2d 581 (2006). "General Statutes § 46b-81 (c) directs the court to consider numerous separately listed criteria. No language of presumption is contained in the statute. Indeed, § 46b-81 (a) permits the farthest reaches from an equal division as is possible, allowing the court to assign to either the husband or wife all or any part of the estate of the other. . . . On the basis of the plain language of § 46b-81, there is no presumption in Connecticut that marital property should be divided equally prior to applying the statutory criteria." (Internal quotation marks omitted.) *Rivnak* v. *Rivnak*, supra, 99 Conn. App. 332. Mindful of these principles, we conclude that the defendant's claim has no merit.

In addressing its financial orders, the court noted that it had considered all the evidence, as well as the provisions of § 46b-81, and found that, "[a]fter six days of trial, [it was] satisfied that the [defendant] sought to take financial advantage of the [plaintiff] by deceitfully clever means." The court also found that the defendant had "artfully disguised his assets so that a substantial portion of his equitable estate [had] been reduced [and, therefore, although] this judgment may appear lopsided . . . a close look at [the defendant's] machinations will make the result transparent." The court then set out, in detail, its findings concerning the defendant's "nefarious dealings."[4]

---

[4] The court found that the defendant's "nefarious dealings [started] with the 95 Park Avenue, Shelton property. [The defendant's] mother testified that she conveyed one half . . . of her home at 95 Park Avenue in Shelton to . . . [the defendant] and two daughters, Boguslawa [Foldy] and Danuta [Salek], but that the defendant conveyed his interest back to his two sisters when [his] marriage disintegrated in March, 2005. . . . Salek now owns 95 Park Avenue with . . . Foldy. . . . Based on all of the testimony there

Upon our thorough review of the record, we conclude that the financial orders fashioned were well within the court's broad discretionary power. We cannot say that the court's orders concerning the financial plan as a whole disproportionately favored the plaintiff. To the contrary, given the court's findings concerning the defendant's conduct both during the marriage and in anticipation of its dissolution, the amount of the defendant's earnings, the total value of their marital assets and the fact that the defendant was the cause of the marital breakdown, the financial orders are within the court's broad discretion.

The judgment is affirmed.

In this opinion the other judges concurred.

can be no misunderstanding other than the 95 Park Avenue property was reconveyed to the sisters by the defendant with the hope that [the] defendant's interest would not be considered as part of his [marital] estate. [The defendant's] one-third interest is valued at $100,000.

"The other transactions [of concern] are less transparent. The court finds that the defendant and his two sisters lack credibility. . . . The . . . parties' home became joint after the birth of the first child. It [was] stipulated that the value [at the time of the judgment was] $375,000. There are no encumbrances hereon. [The defendant] testified that this asset was offset by a loan of $100,000 from his sister. His claim that he still owes $100,000 some seventeen years later is not worthy of belief.

"The court [was] also satisfied that the [defendant] had an ownership interest in property located at 1351 Huntington Turnpike, Trumbull. It was purchased in his name only on September 10, 1996, held in his name for eight years before he transferred half of it for no consideration and which was then sold by him and his niece for $349,000, without any mortgage. He claims the property was really his sister Maria's, a factory worker. This property was the subject of a foreclosure action, the file in the foreclosure action indicates a dogged and determined effort by the [defendant] to acquire this property. At the time he deeded his interest in this property, the [defendant] obtained at least $160,000.

"In addition, in 2005, when the parties' marital difficulties hit fever pitch, $163,000 was withdrawn from the parties' joint Webster savings account [of which] $100,000 was given to [the defendant's] sister Maria, and $52,305.94 [was used] to purchase an Infiniti presently listed on the [defendant's] affidavit as being owned by him."