HOWARD C. FRITZ *v.* JULIANNA M. FRITZ
(AC 30167)

Lavine, Beach and Lavery, Js.

Argued December 6, 2010—officially released April 12, 2011

*Samuel V. Schoonmaker IV*, with whom, on the brief, was *Wendy Dunne DiChristina*, for the appellant (plaintiff).

*George J. Markley*, for the appellee (defendant).

LAVERY, J. The plaintiff, Howard C. Fritz, appeals from the judgment of the trial court dissolving his marriage to the defendant, Julianna M. Fritz. The plaintiff takes issue with the court's financial orders and awards, claiming that the court (1) improperly awarded him nonmodifiable, time limited periodic alimony and (2) made erroneous assumptions about his contributions to the parties' home equity line of credit.[1] We affirm the judgment of the trial court.

The following facts and procedural history are relevant to our resolution of the plaintiff's claims on appeal. The parties were married on May 29, 1994, and their only child was born on June 22, 1995. The plaintiff commenced the underlying divorce action on April 6, 2006. The parties continued to reside together until November 16, 2006, when the court granted the defendant's motion for exclusive possession of the marital residence located at 168 Westport Road in Wilton. Shortly thereafter, the plaintiff moved into the parties' rental property located at 1179-1181 Hope Street in Stamford. The court heard testimony over five days in March, 2008, and issued its memorandum of decision on July 2, 2008. The court then articulated its decision on February 13, 2009, and August 6, 2009.

The court found the following facts. The plaintiff, aged forty-four, holds a bachelor's degree from the State University of New York at Albany. Following his graduation from college, he held a wide range of positions within the publishing industry. He also launched two privately held businesses, which he operated until 2002. As of the date of trial, he was working as a self-employed

---

[1] At oral argument before this court, the plaintiff abandoned his second claim, which pertained to the order of custody regarding the parties' minor child, and his fourth claim, which pertained to the division of the parties' personal property.

Realtor. His income was "sporadic, inconsistent and unpredictable." The defendant, also aged forty-four, holds a bachelor's degree from Ithaca College. As of the date of trial, she was working for JP Morgan Chase Bank. She had an annual gross income of $128,000.

On March 18, 2002, the plaintiff was involved in an automobile collision. He complained of back and neck pain, and was taken to a nearby hospital for treatment. Although he was discharged from the hospital later that day, he continued to feel "as if he was in a huge cloud." (Internal quotation marks omitted.)

At trial, the plaintiff argued that the collision adversely had affected his mental capacity and ability to work. Specifically, he testified that his mental processing speed had slowed and that he found it difficult to express himself following the collision. Jeffrey S. Cohen, the plaintiff's treating psychologist, testified that the plaintiff's mental processing speed was abnormally slow and that the plaintiff's attention, concentration and memory skills were deficient. Cohen also testified that the plaintiff was suffering from anxiety, depression, postconcussive syndrome and post-traumatic stress disorder. Sidney S. Horowitz, the court-appointed psychologist, testified that the plaintiff's judgment, memory and insight skills were mildly to moderately impaired and that the plaintiff's attention, concentration and visual motor integration skills were severely impaired. The defendant testified, however, that she had not noticed any change in the plaintiff's mental capacity following the collision.

On July 2, 2008, the court issued the judgment of dissolution, comprehensive financial orders and alimony award that form the basis of the present appeal. The court, in its memorandum of decision, made several findings regarding the plaintiff's argument that the collision adversely had affected his mental capacity and

ability to work. Specifically, the court found that the plaintiff ably had managed the parties' rental property, passed a real estate licensing examination and conducted several real estate transactions following the collision. The court also found that the plaintiff offered no evidence, other than his own testimony, that tends to demonstrate that the collision adversely affected his ability to maintain some form of employment. The court then found that the plaintiff had an earning capacity of at least $40,000 per year.

The court also made several findings regarding the parties' home equity line of credit. Specifically, the court found that "[t]he parties have relied heavily on their home equity line of credit . . . to service recurring debt and to pay lawyers. Between January, 2006, and July, 2007, aside from what appears to be payment of the family's regularly recurring, customary and/or ordinary expenses, the plaintiff has paid to himself the sum of approximately $111,500. The court would note that the defendant was paying all three mortgages [on the parties' marital residence and rental property] and the plaintiff has made no contribution toward those expenses. The plaintiff has made one payment toward the balance owed on the [home equity line of credit] in the amount of $5000."

The court entered comprehensive financial orders in connection with the parties' assets, and ordered the defendant to pay to the plaintiff periodic alimony in the amount of $1000 per month for a term of two years. The alimony award provides that it shall be nonmodifiable as to the specified amount and term.

On December 16, 2008, the plaintiff filed a motion for articulation requesting, among other things, that the court articulate whether it considered the plaintiff's health in fashioning the alimony award. The court granted the plaintiff's motion and issued its articulation

on February 13, 2009. The articulation provides in relevant part: "As to the award of rehabilitative alimony to the plaintiff, the court considered all of the relevant statutory criteria as set forth in [General Statutes §] 46b-82 . . . . The court's award of alimony was time limited, in that the evidence demonstrated that the plaintiff has the ability to support himself, but would require a reasonable amount of time, with this litigation no longer consuming him, before he was fully self-sufficient."

On March 3, 2009, the plaintiff filed a motion for further articulation requesting, among other things, that the court articulate whether it found that the defendant had used funds from the home equity line of credit to make mortgage payments on the parties' marital residence. The court denied the plaintiff's motion. Thereafter, the plaintiff filed with this court a motion for review, which this court granted on May 6, 2009. In its August 6, 2009 articulation, the trial court stated in relevant part: "In addition to the court's finding at pages 25–27 of the court's July 2, 2008 memorandum of decision, the court would add that, by way of the defendant's employment income and use of the parties' [home equity line of credit], the defendant paid substantially all of the parties' regularly recurring debts, including the mortgages on both the [marital residence and rental property]. The plaintiff contributed little, if any funds, to the parties' recurring debts." This appeal followed. Additional facts and procedural history will be set forth as necessary.

We begin by setting forth the applicable standard of review. "It is within the province of the trial court to find facts and draw proper inferences from the evidence presented. . . . [W]here the factual basis of the court's decision is challenged we must determine whether the

facts set out in the memorandum of decision are supported by the evidence or whether, in light of the evidence and the pleadings in the whole record, these facts are clearly erroneous. . . . An appellate court will not disturb a trial court's orders in domestic relations cases unless the court has abused its discretion or it is found that it could not reasonably conclude as it did, based on the facts presented. . . . In determining whether a trial court has abused its broad discretion in domestic relations matters, we allow every reasonable presumption in favor of the correctness of its action." (Citation omitted; internal quotation marks omitted.) *Kovalsick* v. *Kovalsick*, 125 Conn. App. 265, 270–71, 7 A.3d 924 (2010).

I

The plaintiff first claims that the court abused its discretion by awarding him nonmodifiable, time limited alimony. Specifically, he argues that the court (1) did not adequately consider his health in fashioning the alimony award, and improperly (2) found that he had an earning capacity of at least $40,000 per year, (3) limited the duration of the award to two years and (4) precluded modification of the award. We are not persuaded.

A

The plaintiff argues that the court abused its discretion by not adequately considering his health in fashioning the alimony award pursuant to the requirements of § 46b-82. Specifically, he argues that the court did not adequately consider the adverse effect of the collision on his mental capacity and ability to work. In response, the defendant argues that the court thoroughly considered the available evidence regarding the plaintiff's health in compliance with § 46b-82. We agree with the defendant.

"[Section] 46b-82 governs awards of alimony. That section requires the trial court to consider the length of the marriage, the causes for the . . . dissolution of the marriage . . . the age, health, station, occupation, amount and sources of income, vocational skills, employability, estate and needs of each of the parties . . . . In awarding alimony, [t]he court must consider all of these criteria. . . . It need not, however, make explicit reference to the statutory criteria that it considered in making its decision or make express findings as to each statutory factor. . . . In particular, rehabilitative alimony, or time limited alimony, is alimony that is awarded primarily for the purpose of allowing the spouse who receives it to obtain further education, training, or other skills necessary to attain self-sufficiency." (Internal quotation marks omitted.) Id., 271–72.

Our review of the record indicates that the court fully considered the plaintiff's health in fashioning the alimony award. The court heard testimony from several witnesses regarding the plaintiff's health and received a variety of reports from two psychologists regarding the plaintiff's mental capacity. The court also heard testimony and received evidence regarding the plaintiff's professional activities following the collision. In light of the foregoing evidence, the court found that the plaintiff was able to work and that his "capacity, both physical and mental, [was] greater than that to which he aspire[d]." We therefore conclude that the claim that the court abused its discretion by failing to consider the plaintiff's health in fashioning the alimony award is without merit.

B

The plaintiff next argues that the court abused its discretion by imputing to him an earning capacity of at least $40,000 per year. Specifically, he argues that

the court's finding is unrealistic in light of his training, mental capacity and recent employment history.[2] In response, the defendant argues that the court's finding is realistic in light of the available evidence. We agree with the defendant.

"[T]he court may base financial awards on earning capacity rather than actual earned income of the parties. . . . While there is no fixed standard for the determination of an individual's earning capacity . . . it is well settled that earning capacity is not an amount which a person can theoretically earn, nor is it confined to actual income, but rather it is an amount which a person can realistically be expected to earn considering such things as his vocational skills, employability, age and health. . . . [T]he court may consider earning capacity from employment when the evidence shows that the reported amount of earnings is unreasonable. Thus, for example, when a person is, by education and experience, capable of realizing substantially greater earnings simply by applying himself or herself, the court has demonstrated a willingness to frame its orders on capacity rather than actual earnings. . . . It is appropriate to consider a party's earning capacity where there is evidence of that party's previous earnings." (Citation omitted; internal quotation marks omitted.) *Boyne* v. *Boyne*, 112 Conn. App. 279, 283, 962 A.2d 818 (2009).

The record contains ample support for the court's finding that the plaintiff has an earning capacity of at

[2] In the section of the plaintiff's brief that addresses the court's finding regarding the plaintiff's earning capacity, the plaintiff appears to assert an additional argument under the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101 et seq. He argues that "[i]f [he] has a disability that substantially limits his ability to perform the essential functions of his previous jobs, then he may not be qualified, with or without accommodations, to hold those jobs." Because the plaintiff's argument is little more than a bare assertion unsupported by a material legal analysis, we decline to review the merits of his argument. See *DiBlase* v. *Logistec Connecticut, Inc.*, 123 Conn. App. 753, 758 n.4, 3 A.3d 128, cert. denied, 299 Conn. 908, 10 A.3d 524 (2010).

least $40,000 per year. While the court found that the plaintiff's income since the date of the collision had been sporadic, it also found that his financial difficulties were due, in large measure, to his failure to apply himself to his work as a self-employed Realtor. Specifically, the court found that the plaintiff had not advertised his services, maintained office hours, retained telephone coverage or worked for more than two hours each day. While the court found that the plaintiff had not invested sufficient time and effort into his work, it credited the plaintiff's testimony that he had earned between five and six commissions since the date of the collision. The court also took note of one transaction in 2005 in which the plaintiff and an investment partner invested in and renovated a property, from which the defendant earned $38,260. The court then found that there is nothing in the record that tends to demonstrate that the plaintiff would be unable to conduct similar transactions in the future.

In addition to its extensive findings regarding the plaintiff's work as a self-employed Realtor, the court also made extensive findings regarding the plaintiff's continued management of the parties' rental property. The court found that the plaintiff's responsibilities in managing the rental property were substantial, as he was responsible for locating tenants, negotiating lease agreements and coordinating renovations. The court then found that the plaintiff's negotiation of one lease agreement demonstrated that he was clear, decisive and organized.

In light of the foregoing, we conclude that the record contains sufficient evidence regarding the plaintiff's education and employment history to support the court's finding that he had an earning capacity of at least $40,000 per year. The finding, therefore, is not clearly erroneous and the court did not abuse its discretion.

## C

The plaintiff also argues that the court abused its discretion by limiting the duration of the alimony award to two years. Specifically, the plaintiff argues that the two year time limitation is logically inconsistent with the court's findings of fact and the evidence in the record. In response, the defendant argues that the two year time limitation is fully supported by the court's findings and the evidence in the record. We agree with the defendant.

"Time limited alimony is often awarded. [Our Supreme Court] has dealt with challenges to an award of time limited alimony on numerous occasions. . . . The trial court does not have to make a detailed finding justifying its award of time limited alimony. . . . Although a specific finding for an award of time limited alimony is not required, the record must indicate the basis for the trial court's award. . . . There must be sufficient evidence to support the trial court's finding that the spouse should receive time limited alimony for the particular duration established. If the time period for the periodic alimony is logically inconsistent with the facts found or the evidence, it cannot stand. . . . In addition to being awarded to provide an incentive for the spouse receiving support to use diligence in procuring training or skills necessary to attain self-sufficiency, time limited alimony is also appropriately awarded to provide interim support until a future event occurs that makes such support less necessary or unnecessary." (Internal quotation marks omitted.) *de Repentigny* v. *de Repentigny*, 121 Conn. App. 451, 460–61, 995 A.2d 117 (2010).

In the present case, the court found that while the plaintiff was capable of working, he had been consumed by the dissolution litigation. The court determined, therefore, that the plaintiff would require a reasonable

amount of time after the litigation before he could become fully self-sufficient. In light of its findings, the court limited the duration of the alimony award to two years. Our review of the record reveals ample support for the court's findings. We conclude, therefore, that the court did not abuse its discretion by limiting the duration of the alimony award to two years.

D

The plaintiff finally argues that the court abused its discretion by precluding modification of the alimony award. Specifically, the plaintiff argues that nonmodifiable alimony awards are contrary to public policy. In response, the defendant argues that the court had the authority under § 46b-86 to preclude modification of the award. We agree with the defendant.

"It is a well settled principle of matrimonial law that courts have the authority under § 46b-86 to preclude the modification of alimony awards. . . . Section 46b-86 (a) itself provides in relevant part that [*u*]*nless and to the extent that the decree precludes modification* . . . any final order for the periodic payment of permanent alimony . . . may at any time thereafter be continued, set aside, altered or modified by said court upon a showing of a substantial change in the circumstances of either party. . . . This statute clearly permits a trial court to make periodic awards of alimony nonmodifiable." (Citations omitted; emphasis in original; internal quotation marks omitted.) *Marshall* v. *Marshall*, 119 Conn. App. 120, 128–29, 988 A.2d 314, cert. granted on other grounds, 296 Conn. 908, 993 A.2d 467 (2010) (appeal withdrawn November 18, 2010).

The plaintiff's policy argument is trumped by the plain language of § 46b-86, which empowers the trial court to preclude modification of an alimony award. Moreover, the plaintiff's argument is contrary to our case

law. See id. Accordingly, the plaintiff's argument is without merit.

## II

The plaintiff next claims that the court made erroneous assumptions about his contributions to the parties' home equity line of credit. Specifically, he argues that the court's finding is clearly erroneous and that the court improperly altered its finding by way of its August 6, 2009 articulation. We are not persuaded.

General Statutes § 46b-81 governs assignments of property and transfers of title in dissolution proceedings. The plaintiff focuses on § 46b-81 (c), which provides in relevant part: "In fixing the nature and value of the property, if any, to be assigned, the court, after hearing the witnesses, if any, of each party, except as provided in subsection (a) of section 46b-51, shall consider the length of the marriage, the causes for the . . . dissolution of the marriage . . . the age, health, station, occupation, amount and sources of income, vocational skills, employability, estate, liabilities and needs of each of the parties and the opportunity of each for future acquisition of capital assets and income. *The court shall also consider the contribution of each of the parties in the acquisition, preservation or appreciation in value of their respective estates.*" (Emphasis added.)

The plaintiff argues that the court erroneously found that he " 'made no contribution' " to the "payments of expenses of the family, including the mortgages and the home equity line of credit." The court, however, did not find that the plaintiff "made no contribution" toward the home equity line of credit. Rather, the court found that between January, 2006, and July, 2007, the plaintiff used funds from the home equity line of credit to cover the parties' regularly recurring debts, and specifically found that he had made one payment toward

the balance owed on the home equity line of credit. The court found that the defendant "was paying all three mortgages" and that the plaintiff has "made no contribution" toward "those expenses." The court noted that only the defendant was making any payments on the first mortgages on each property but specifically credited the plaintiff's one $5000 payment toward the home equity line of credit. Thus, the plaintiff's argument is without merit.

The plaintiff also argues that the court improperly altered its initial finding by way of its August 6, 2009 articulation. Specifically, he argues that the court "broadened its answer . . . beyond the [home equity line of credit] in a possible attempt to minimize its problematic 'no contribution' finding." Because we have determined that the court did not find that the plaintiff "made no contribution" to the home equity line of credit, the plaintiff's argument is without merit.

The judgment is affirmed.

In this opinion the other judges concurred.