******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

JAMES RICCIO *v.* LISA RICCIO
(AC 40540)

Sheldon, Bright and Bear, Js.

*Syllabus*

The plaintiff appealed to this court from the judgment of the trial court dissolving his marriage to the defendant and making certain financial orders. He claimed, inter alia, that the trial court improperly valued and distributed the parties' defined benefit plans and abused its discretion in making certain of its financial awards. *Held* that the trial court properly considered the appropriate statutory (§§ 46b-81 and 46b-82) factors in making its financial orders, which were supported by the court's findings and were within its discretion; that court's distribution of the parties' assets was not inequitable simply because it was not equal in monetary terms, the plaintiff failed to demonstrate that the court abused its discretion in applying the present division method, instead of the present value method, in distributing the parties' defined benefit plans, and the court's order requiring the defendant to pay to the plaintiff rehabilitative alimony did not constitute impermissible double dipping, as the court considered the plaintiff's income from his pension, rather than the value of the pension asset, and his other income to determine how much additional support he would need from the defendant.

Argued April 19—officially released July 31, 2018

*Procedural History*

Action for the dissolution of a marriage, and for other relief, brought to the Superior Court in the judicial district of Hartford and tried to the court, *Nastri, J.*; judgment dissolving the marriage and granting certain other relief, from which the plaintiff appealed to this court. *Affirmed.*

*Keith Yagaloff*, for the appellant (plaintiff).

*Fatima T. Lobo*, for the appellee (defendant).

*Opinion*

PER CURIAM. The plaintiff, James Riccio, appeals from the judgment of the trial court dissolving his marriage to the defendant, Lisa Riccio. On appeal, the plaintiff claims that the court (1) abused its discretion in making its financial orders because, in their entirety, they favored the defendant; (2) erred in applying the present division method of valuation to the distribution of the parties' defined benefit plans; and (3) erred in its treatment of the plaintiff's pay-status pension and the defendant's nonpay-status pension. We affirm the judgment of the trial court.

The following facts and procedural history are relevant to the plaintiff's claims. The plaintiff and the defendant were married on October 20, 1978. The plaintiff brought the underlying action for dissolution of marriage by complaint dated March 8, 2016. Following a five day trial, on May 24, 2017, the court dissolved the parties' marriage on the ground of irretrievable breakdown,[1] and entered various financial and property division orders. The court ordered, in relevant part, that the defendant pay to the plaintiff $125 per week for a period of eighteen months as rehabilitative alimony,[2] and that the plaintiff pay to the defendant $1 per week as alimony for a period of eighteen months because the defendant's employment future was uncertain. The court also ordered that "[t]he defendant shall transfer $48,750 to the plaintiff from her Fidelity 401 (k) plan . . . . This distribution takes into account the disparity in the parties' defined benefit plans. . . . The parties shall retain, free and clear of any claim by the other, their defined benefit plans. . . . The defendant shall retain . . . any interest she has in [her] Computershare MetLife policy. The plaintiff shall retain the Minnesota Life Insurance Policy, and its cash value . . . ."[3] (Footnote omitted.) This appeal followed.

We begin by setting forth our general standard of review in family matters. "The standard of review in family matters is well settled. An appellate court will not disturb a trial court's orders in domestic relations cases unless the court has abused its discretion or it is found that it could not reasonably conclude as it did, based on the facts presented. . . . It is within the province of the trial court to find facts and draw proper inferences from the evidence presented. . . . In determining whether a trial court has abused its broad discretion in domestic relations matters, we allow every reasonable presumption in favor of the correctness of its action. . . . [T]o conclude that the trial court abused its discretion, we must find that the court either incorrectly applied the law or could not reasonably conclude as it did. . . . Appellate review of a trial court's findings of fact is governed by the clearly erroneous standard of review. . . . A finding of fact is clearly erroneous when there is no evidence in the record to

support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." (Internal quotation marks omitted.) *Powell-Ferri* v. *Ferri*, 326 Conn. 457, 464, 165 A.3d 1124 (2017).

The plaintiff first claims that the court abused its discretion because its "financial orders . . . are inequitably favorable to the defendant [because the] orders assign to the defendant the large majority of the marital assets and income." Specifically, the plaintiff challenges the court's orders regarding the alimony award, the division of the parties' pensions and retirement funds, unknown future debt, the requirement that the parties pay their own health insurance, the defendant's MetLife account, and attorney's fees.

"In dissolution proceedings, the court must fashion its financial orders in accordance with the criteria set forth in [General Statutes] § 46b-81 (division of marital property) and [General Statutes] § 46b-82 (alimony)." (Internal quotation marks omitted.) *Rozsa* v. *Rozsa*, 117 Conn. App. 1, 9, 977 A.2d 722 (2009); see also *Loughlin* v. *Loughlin*, 280 Conn. 632, 640, 910 A.2d 963 (2006). "Under these statutes, the court shall consider, inter alia: the length of the marriage, the causes for the . . . dissolution of the marriage . . . the age, health, station, occupation, amount and sources of income, vocational skills, employability, estate . . . and needs of each of the parties . . . ."[4] (Internal quotation marks omitted.) *Loughlin* v. *Loughlin*, supra, 640. "While the trial court must consider the delineated statutory criteria . . . no single criterion is preferred over others, and the court is accorded wide latitude in varying the weight placed upon each item under the peculiar circumstances of each case. . . . A trial court . . . need not give each factor equal weight . . . or recite the statutory criteria that it considered in making its decision or make express findings as to each statutory factor." (Internal quotation marks omitted.) *Kent* v. *DiPaola*, 178 Conn. App. 424, 431–32, 175 A.3d 601 (2017).

Importantly, "§ 46b-81 (a) permits the farthest reaches from an equal division as is possible, allowing the court to assign to either the husband or wife all or any part of the estate of the other. . . . On the basis of the plain language of § 46b-81, there is no presumption in Connecticut that marital property should be divided equally prior to applying the statutory criteria." (Internal quotation marks omitted.) *Kaczynski* v. *Kaczynski*, 124 Conn. App. 204, 213, 3 A.3d 1034 (2010). Additionally, "[i]ndividual financial orders in a dissolution action are part of the carefully crafted mosaic that comprises the entire asset reallocation plan. . . . Under the mosaic doctrine, financial orders should not be viewed as a collection of single disconnected occur-

rences, but rather as a seamless collection of interdependent elements." (Internal quotation marks omitted.) *Barcelo* v. *Barcelo*, 158 Conn. App. 201, 226, 118 A.3d 657, cert. denied, 319 Conn. 910, 123 A.3d 882 (2015).

We have considered carefully the plaintiff's various arguments in support of his claim regarding the court's financial orders, and we conclude that he has not established that the court has misapplied the law, abused its discretion or committed clear error. The court's distribution of the parties' assets, although not equal in monetary terms, is not inequitable solely on the basis of that disparity.[5] See, e.g., *O'Brien* v. *O'Brien*, 326 Conn. 81, 122, 161 A.3d 1236 (2017) ("[A] distribution ratio of 78 percent to 22 percent is not, on its face, excessive, as the plaintiff contends. Indeed, we have upheld distributions awarding as much as 90 percent of the marital estate to one party."). Our thorough review of the record leads us to conclude that the court properly considered the appropriate statutory factors, and that its orders were both supported by its findings and within its broad discretion.

The plaintiff next claims that the court applied the incorrect valuation standard for the distribution of the parties' defined benefit plans because it should have applied the present value method instead of the present division method.

"There are three widely approved methods of valuing and distributing pension benefits"—the present value method, the present division method, and the reserved jurisdiction method.[6] *Krafick* v. *Krafick*, 234 Conn. 783, 800, 663 A.2d 365 (1995). "[I]t is within the trial court's discretion . . . to choose, on a case-by-case basis . . . [the] valuation method that it deems appropriate . . . ." (Citation omitted.) *Bender* v. *Bender*, 258 Conn. 733, 760, 785 A.2d 197 (2001). In the present case, the plaintiff claims that, "[b]ecause [his] pension was already in pay status, the present value method was likely the preferable valuation and distribution method," and not the present division method. The plaintiff, however, has failed to demonstrate that the court abused its broad discretion in applying the present division method.

Finally, the plaintiff claims that the court erred in its treatment of his pay-status pension and the defendant's nonpay-status pension. Specifically, the plaintiff claims that the court's order constituted impermissible "double dipping" because the court considered his income from his pension in making the alimony award and also in dividing the parties' assets.

Trial courts are vested with broad discretion to award alimony, and, when a court determines whether to award alimony and the amount of any such award, § 46b-82 expressly authorizes the court to consider the marital assets distributed to each party in connection

with the dissolution proceeding. See General Statutes § 46b-82; *Krafick* v. *Krafick*, supra, 234 Conn. 805 n.26; see also *O'Brien* v. *O'Brien*, supra, 326 Conn. 120 ("[t]he retroactive alimony award was not improper because trial courts are free to consider the marital assets distributed to the party paying alimony as a potential source of alimony payments" [emphasis omitted]). "A trial court's alimony award constitutes impermissible double dipping only if the court considers, as a source of the alimony payments, assets distributed to the party receiving the alimony. . . . That is, if a trial court assigns a certain asset—a bank account, for example—to the party receiving alimony, it cannot consider that same bank account as a source of future alimony payments because the account has not been distributed to the party paying the alimony." (Citations omitted; emphasis omitted.) *O'Brien* v. *O'Brien*, supra, 120–21; see also *Krafick* v. *Krafick*, supra, 804–805 n.26 (double dipping occurs when court relies "on the pension benefits allocated to the employee spouse under § 46b-81 as a source of alimony . . . [and] only to the extent that any portion of the pension assigned to the nonemployee spouse was counted in determining the employee spouse's resources for purposes of alimony"). In the present case, in ordering the defendant to pay to the plaintiff rehabilitative alimony, the court considered the plaintiff's income from his pension, rather than the value of the pension asset, and his other income, to determine how much additional support he would need from the defendant for rehabilitative alimony. This does not constitute double dipping.

The judgment is affirmed.

[1] The court assigned primary fault for the breakdown of the marriage to the plaintiff. On appeal, the plaintiff challenges the court's finding that his "single-minded devotion to his sobriety, his obsession with bowling, his infidelity and his deceptions are the primary reasons for the failure of the marriage." On the basis of our review of the record, we conclude that the court's finding is amply supported by the evidence and, therefore, not clearly erroneous. See *Greco* v. *Greco*, 70 Conn. App. 735, 736–37, 799 A.2d 331 (2002) (court's finding of fact regarding breakdown of marriage will be reversed only if it is clearly erroneous).

[2] "[R]ehabilitative alimony, or time limited alimony, is alimony that is awarded primarily for the purpose of allowing the spouse who receives it to obtain further education, training, or other skills necessary to attain self-sufficiency." (Internal quotation marks omitted.) *Fritz* v. *Fritz*, 127 Conn. App. 788, 795, 21 A.3d 466 (2011).

[3] The parties each had their own retirement funds—the defendant had a Fidelity 401 (k) account, and the plaintiff had a Thrift Savings account, each of which is a defined benefit plan. Because of the discrepancy in the value of the parties' defined benefit plans, the court distributed $240,819 of the defendant's 401 (k) account to her and ordered that the plaintiff receive the remaining $48,750 in the defendant's 401 (k) account. The plaintiff retained the full amount of his $138,000 Thrift Savings account.

[4] The court stated in its memorandum of decision that it considered all of the evidence before it, as well as the factors set forth in §§ 46b-81 (c) and 46b-82, in making its orders.

[5] The court noted in its memorandum of decision that it "has divided the parties' marital assets fairly and equitably, albeit not necessarily equally." The majority of the assets, however, were divided equally. Additionally, although the court's allocation of the parties' retirement funds was 56 percent to the defendant and 44 percent to the plaintiff, the court properly could, in its discretion, divide the parties' assets in this manner in the specific

circumstances of this case, given its findings.

[6] "[T]he present value or offset method . . . requires the court to determine the present value of the pension benefits, decide the portion to which the nonemployee spouse is entitled, and award other property to the nonemployee spouse as an offset to the pension benefits to which he or she is otherwise entitled." (Internal quotation marks omitted.) *Krafick* v. *Krafick*, supra, 234 Conn. 800. "Under the 'present division' method, the trial court determines at the time of trial, the percentage share of the pension benefits to which the nonemployee spouse is entitled." Id., 803. "[U]nder the 'reserved jurisdiction' method, the trial court reserves jurisdiction to distribute the pension until benefits have matured." Id. In this case, however, each of the spouses had been or was employed and each had earned a pension, so there was no "nonemployee" spouse.

———————————————