******************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.
******************************************

# LINDA MERK-GOULD *v.* ROBERT F. GOULD, JR.
## (AC 40172)

Lavine, Alvord and Keller, Js.

*Syllabus*

The defendant appealed to this court from the judgment of the trial court dissolving his marriage to the plaintiff and making certain financial and property orders. He claimed, inter alia, that the court erroneously found that he had an annual earning capacity of $200,000. *Held*:

1. The trial court's finding that the defendant had an earning capacity of $200,000 per year was clearly erroneous and not supported by the evidence: although the defendant testified that since leaving employment in 2003, he had earned sufficient money to pay his expenses by investing in various securities, the trial court awarded 60 percent of those investment assets to the plaintiff, its finding of an earning capacity was made in consideration of the defendant's investment income, and the record lacked evidence to support a finding that the defendant could return to work after having been out of the workforce since 2003, or that $200,000 was a net amount that he could realistically be expected to earn after being left with only 40 percent of his investment assets; accordingly, because the alimony award was necessarily interwoven with the court's remaining financial and property orders, a new hearing was necessary at which the court had to reconsider all of the financial and property orders.

2. The trial court abused its discretion in valuing the defendant's interests in private equity companies on the basis of the cost of the assets at the time of their purchase rather than as of the date of the marital dissolution; pursuant to statute (§ 46b-81 [a]), the court may assign to either spouse all or any part of the estate of the other spouse at the time of entering a dissolution decree, which demonstrated that the date of the granting of the divorce was the proper time by which to determine the value of the estate of the parties on which to base the division of property, and the plaintiff's claim that the court's order was a precise means of providing a remedy for the defendant's dissipation of marital assets was unavailing, as she made no claim of dissipation before the trial court, which made no findings related to dissipation or that the defendant had violated any court order.

Argued May 30—officially released September 4, 2018

*Procedural History*

Action for the dissolution of a marriage, and for other relief, brought to the Superior Court in the judicial district of Stamford-Norwalk and tried to the court, *Tindill, J.*; judgment dissolving the marriage and granting certain other relief; thereafter, the court denied the defendant's motion to reargue, and the defendant appealed to this court. *Reversed in part*; *further proceedings*.

*Campbell D. Barrett*, with whom were *Johanna S. Katz* and, on the brief, *Jon T. Kukucka*, for the appellant (defendant).

*Kenneth J. Bartschi*, with whom were *Dana M. Hrelic* and, on the brief, *Wayne Effron*, for the appellee (plaintiff).

*Opinion*

ALVORD, J. The defendant, Robert F. Gould, Jr., appeals from the judgment of the trial court dissolving his marriage to the plaintiff, Linda Merk-Gould, and entering certain financial and property orders. On appeal, the defendant claims that the court: (1) improperly ordered tax-free alimony to the plaintiff; (2) erroneously found that the defendant had an annual earning capacity of $200,000; (3) improperly awarded the plaintiff 60 percent of the pretax amount of the defendant's pension; (4) abused its discretion in valuing the defendant's interests in several private equity companies on the basis of the cost of the assets at the time of purchase, rather than the value of the assets as of the date of the dissolution; (5) abused its discretion in awarding the plaintiff attorney's fees; and (6) abused its discretion in denying his motion for a mistrial. Because we agree with the defendant's second and fourth claims, we reverse in part the judgment of the trial court and remand the case for a new trial on the financial and property orders.[1]

The following facts, as found by the trial court, and procedural history are relevant to this appeal. The parties were married on May 25, 1987, and have two adult children. Both parties entered the marriage with assets, and both inherited money from family members during the marriage. The parties kept the majority of their income and assets separate during the marriage, and the defendant has significantly greater assets than the plaintiff. The plaintiff, who was sixty-four at the time of trial, had ended her career at age forty-eight because of health reasons. The defendant was sixty-five years old at the time of trial, in good health, and well educated, having received an undergraduate degree and a master of business administration degree. The defendant left full-time employment fourteen years prior to trial, at age fifty-one, and "has subsisted on passive income from investments and [distributions from] his [PricewaterhouseCoopers LLP] Partner Retirement Plan [(pension)]." Specifically, the defendant "has earned income as a 'self-directed' investor since 1980 such that he did not have to seek gainful employment after 2002 to meet monthly expenses (which now total $11,709)."

On May 1, 2013, the plaintiff commenced this dissolution action. The defendant filed an answer and a cross-complaint. The matter was tried to the court over eight days. On January 31, 2017, the court rendered judgment dissolving the parties' marriage, finding that the defendant was at fault for the breakdown of the marriage. In its memorandum of decision, the court made orders regarding property distribution, alimony, and attorney's fees. The court awarded alimony on the basis of the defendant's earning capacity, finding that "[t]he credible evidence before the court shows that the defendant can reasonably be expected to earn $200,000 (net) annu-

ally." Utilizing that finding of fact, the court ordered alimony to the plaintiff in the amount of $7500 per month beginning February, 2017, until the death of either party or the remarriage of the plaintiff, whichever should occur first. The court ordered that the alimony payments "will not be taxable to the plaintiff nor deductible by the defendant."

With respect to property distribution, the plaintiff, in her proposed orders, requested that the court divide all bank accounts, publicly-traded securities, private equity, business annuities, and frequent flier miles listed on the defendant's financial affidavit and award 60 percent of such assets to the plaintiff. She further requested that "the defendant shall receive each of the private equity companies valued at cost, i.e., the amount paid by the defendant . . . for his interest in the company in question, and the plaintiff shall receive a corresponding amount in cash." In its memorandum of decision, the court adopted the plaintiff's proposed order and incorporated it as an order of the court.

The court also awarded the plaintiff attorney's fees in the amount of $220,346.85[2] and 60 percent of the pretax amount of each payment the defendant receives from his pension. The court ordered that the pension payments were not taxable to the plaintiff nor deductible by the defendant, and further that such payments shall continue regardless of the plaintiff's cohabitation or marriage. The defendant filed a motion to reargue, which the court denied on February 24, 2017. This appeal followed.

We begin by setting forth the standard of review. "An appellate court will not disturb a trial court's orders in domestic relations cases unless the court has abused its discretion or it is found that it could not reasonably conclude as it did, based on the facts presented. . . . In determining whether a trial court has abused its broad discretion in domestic relations matters, we allow every reasonable presumption in favor of the correctness of its action. . . . Furthermore, [t]he trial court's findings [of fact] are binding upon this court unless they are clearly erroneous in light of the evidence and the pleadings in the record as a whole. . . . A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." (Citation omitted; internal quotation marks omitted.) *Steller* v. *Steller*, 181 Conn. App. 581, 587–88,     A.3d (2018).

## I

The defendant claims on appeal that the court's finding that he had an earning capacity of $200,000 per year is clearly erroneous. Specifically, he claims that "[t]here

was no evidence presented at trial that could reasonably lead the court to conclude that [the defendant] has the capacity to earn income from employment in the amount of $200,000 per year in after tax income. Rather, the undisputed evidence established that [the defendant] was sixty-five . . . years old at the time of the dissolution and had been out of the workforce for approximately thirteen . . . years." We disagree that the trial court's finding was limited to earning capacity from employment, but nevertheless agree that the court's finding of earning capacity from investment income was clearly erroneous.

General Statutes § 46b-82 provides in relevant part: "In determining whether alimony shall be awarded, and the duration and amount of the award, the court shall consider the evidence presented by each party and shall consider the length of the marriage, the causes for the annulment, dissolution of the marriage . . . the age, health, station, occupation, amount and sources of income, earning capacity, vocational skills, education, employability, estate and needs of each of the parties . . . ." "It is well established that the trial court may under appropriate circumstances in a marital dissolution proceeding base financial awards on the earning capacity of the parties rather than on actual earned income. . . . Earning capacity, in this context, is not an amount which a person can theoretically earn, nor is it confined to actual income, but rather it is an amount which a person can realistically be expected to earn considering such things as his vocational skills, employability, age and health. . . . [I]t also is especially appropriate for the court to consider whether the defendant has wilfully restricted his earning capacity to avoid support obligations . . . . Moreover, [l]ifestyle and personal expenses may serve as the basis for imputing income where conventional methods for determining income are inadequate." (Internal quotation marks omitted.) *Steller* v. *Steller*, supra, 181 Conn. App. 590. "[A] court properly may impute earning capacity from employment . . . [and] [w]e can perceive no reason to adopt a different standard for the ascertainment of investment income than the one we employ for the ascertainment of earning capacity." (Internal quotation marks omitted.) *Fox* v. *Fox*, 152 Conn. App. 611, 634, 99 A.3d 1206, cert. denied, 314 Conn. 945, 103 A.3d 977 (2014), quoting *Weinstein* v. *Weinstein*, 280 Conn. 764, 772, 911 A.2d 1077 (2007).

We first note that the defendant's argument rests upon the premise that the court found that he could realistically be expected to earn $200,000 net by returning to employment. That premise is mistaken. The court's earning capacity determination immediately followed the court's finding that the defendant earns income as a "self-directed" investor, and that he had not needed to return to work to cover his monthly expenses, which totaled $11,709. (Internal quotation

marks omitted.) Accordingly, we conclude that the court's finding of an earning capacity was made in consideration of his investment income, rather than potential employment income.

Indeed, the record entirely lacks evidence to support any finding that the defendant successfully could return to work after having been out of the workforce since approximately 2003, whether the court credited the plaintiff's or the defendant's testimony. The defendant testified that after leaving full-time employment, he had spoken with headhunters and had some interviews, but that nothing "panned out." The defendant further testified that "[a]fter a while I got to the point where it seemed like I was just running into the age ceiling. I was too old by then, fifty-five or whatever, and people were not willing to really consider it. They thought I was overqualified or whatever else. So I figured I'd focus in on the investments and do investing and . . . I thought between the pension and the investment returns, we'd be fine and we were." The defendant also testified that he was subject to a noncompete clause, which prevented him from obtaining employment with competitors. The plaintiff testified that between 2002 and 2013, to her knowledge, the defendant had not accepted any interviews, engaged any headhunters, or otherwise attempted to seek employment. Similarly, the plaintiff testified that she had not sought out work since 2002, but had worked on two occasions for a few days each time. Accordingly, there is nothing in the record that would support a finding that the defendant realistically could be expected to return to employment earning $200,000 net annually.

We conclude that the court's finding that the defendant has a net earning capacity of $200,000 from investment income is not supported by the evidence.[3] Although the defendant testified that since leaving employment in 2003, he has earned sufficient money to pay his expenses by investing in various securities, the court awarded 60 percent of those investment assets to the plaintiff. Specifically, the court divided the defendant's bank accounts, publicly-traded securities, private equity assets, business annuities, and frequent flier miles, and awarded 60 percent to the plaintiff and 40 percent to the defendant. Thus, to the extent the court found a net earning capacity of $200,000 on the basis of the defendant's investment income, the court would have to have evidence that the defendant remained capable of earning that net amount with only 40 percent of his investment assets. See *Cleary* v. *Cleary*, 103 Conn. App. 798, 806–808, 930 A.2d 811 (2007) (considering that plaintiff had been awarded half of defendant's retirement benefits and half of his pension benefits upon retirement in reversing financial orders after concluding that evidence did not reveal income sufficient to support an alimony award of $1000 per week). Our review of the record reveals no evidence supporting a

finding that $200,000 was a net amount that the defendant could realistically be expected to earn after being left with only 40 percent of his investment assets. See *Prial* v. *Prial*, 67 Conn. App. 7, 14, 787 A.2d 50 (2001) (trial court's basis for finding plaintiff's earning capacity was clearly erroneous where "[t]he record is devoid of any testimony, even by the plaintiff, that comparable employment would yield the plaintiff $62,000 per year, the figure adopted by the court for his earning capacity").

The plaintiff argues that the court's earning capacity finding is supported by the defendant's testimony as to the increase in value of his investment assets. On December 18, 2015, the defendant testified that as of August 16, 2013, when he filed his first financial affidavit, his investment assets were worth $5 million, and that his investment portfolio had since grown by 10 percent, or $500,000. The defendant attributed the growth to "[i]mprovements in the market, good investment choices, [and] knowing when to buy and sell." Notwithstanding that the court found that "[t]he vast majority of the defendant's testimony was not credible," even if the court were to credit this particular testimony, it still would not provide the basis for finding a $200,000 net earning capacity in light of the court's award of 60 percent of those assets to the plaintiff.

Because § 46b-82 (a) requires the court, when determining alimony, to consider each party's "amount and sources of income [and] earning capacity"; [internal quotation marks omitted] *Steller* v. *Steller*, supra, 181 Conn. App. 598; the court's clearly erroneous finding as to the defendant's earning capacity requires that we reverse the court's order setting the defendant's alimony obligation.

## II

The defendant next claims that the court erred in valuing certain marital assets available for distribution. Specifically, he claims that the court improperly valued his interests in several private equity companies on the basis of the cost of the assets at the time of his purchase, rather than the value of the assets as of the date of the dissolution. The plaintiff responds that although she did not assert a claim of dissipation as to the assets at issue, the court did not abuse its discretion in fashioning this order, which "was a precise means of providing a remedy for the defendant's dissipation of marital assets . . . ." We agree with the defendant that the court abused its discretion in valuing the assets.

The division of property in dissolution proceedings is governed by General Statutes § 46b-81 (a), which provides in relevant part: "*At the time of entering a decree* . . . dissolving a marriage . . . the Superior Court may assign to either spouse all or any part of the estate of the other spouse." (Emphasis added.) Our

Supreme Court has recognized that "[t]he only temporal reference in the enabling legislation refers us to the time of the decree as controlling the entry of financial orders. It is neither unreasonable nor illogical, therefore, to conclude that the same date is to be used in determining the value of the marital assets assigned by the trial court to the parties." *Sunbury* v. *Sunbury*, 216 Conn. 673, 676, 583 A.2d 636 (1990). Accordingly, "[i]n the absence of any exceptional intervening circumstances occurring in the meantime, [the] date of the granting of the divorce is the proper time by which to determine the value of the estate of the parties upon which to base the division of property." (Internal quotation marks omitted.) *Bruno* v. *Bruno*, 132 Conn. App. 339, 354, 31 A.3d 860 (2011); see also *Kremenitzer* v. *Kremenitzer*, 81 Conn. App. 135, 139, 838 A.2d 1026 (2004).

We reject the plaintiff's argument that the court's order "was a precise means of providing a remedy for the defendant's dissipation of marital assets . . . ." The plaintiff acknowledges that she made no claim of dissipation before the trial court. Moreover, the court in the present case made no findings related to dissipation. See *Gershman* v. *Gershman*, 286 Conn. 341, 351, 943 A.2d 1091 (2008) (trial court erred in considering "dissipation of family assets" in overall asset division where trial court had made no finding of "financial misconduct, e.g., intentional waste or a selfish financial transaction, or that the defendant had used marital assets for a nonmarital purpose with regard to either of [the] transactions" [internal quotation marks omitted]). Nor did the court find that the defendant had violated any court order. Cf. *O'Brien* v. *O'Brien*, 326 Conn. 81, 103, 161 A.3d 1236 (2017) (trial court had discretion to remedy plaintiff's violations of court order through distribution of marital property).

Accordingly, we conclude that the court abused its discretion in valuing the defendant's interests in private equity companies on the basis of the cost of the assets at the time of their purchase, rather than the value of the assets as of the date of the dissolution.

## III

We turn now to the appropriate relief, if any, to be ordered based on the conclusions that we have reached. The defendant seeks "a new hearing on the financial matters of this case," and the plaintiff responds that the challenged orders are "severable from the mosaic of financial orders." We agree with the defendant.

"We previously have characterized the financial orders in dissolution proceedings as resembling a mosaic, in which all the various financial components are carefully interwoven with one another. . . . Accordingly, when an appellate court reverses a trial court judgment based on an improper alimony, property

distribution, or child support award, the appellate court's remand typically authorizes the trial court to reconsider all of the financial orders. . . . We also have stated, however, that [e]very improper order . . . does not necessarily merit a reconsideration of all of the trial court's financial orders. A financial order is severable when it is not in any way interdependent with other orders and is not improperly based on a factor that is linked to other factors. . . . In other words, an order is severable if its impropriety does not place the correctness of the other orders in question. . . . Determining whether an order is severable from the other financial orders in a dissolution case is a highly fact bound inquiry." (Citations omitted; internal quotation marks omitted.) *Tuckman* v. *Tuckman*, 308 Conn. 194, 214, 61 A.3d 449 (2013).

In the present case, we have concluded that the court abused its discretion in fashioning its alimony award upon a clearly erroneous finding that the defendant had a net earning capacity of $200,000. This order is necessarily interwoven with the court's remaining financial and property orders. Accordingly, we conclude that the court on remand must reconsider all of the financial and property orders. See *Wiegand* v. *Wiegand*, 129 Conn. App. 526, 540, 21 A.3d 489 (2011) (reversing financial and property orders after concluding that court abused discretion by failing to award some form of alimony to plaintiff); *Pellow* v. *Pellow*, 113 Conn. App. 122, 129, 964 A.2d 1252 (2009) (reversing financial and property orders after concluding that court abused discretion in rendering judgment under §§ 46b-81 and 46b-82 in excess of defendant's income and without finding as to parties' earning capacity).

The judgment is reversed with respect to all financial orders, including the distribution of marital property, and the case is remanded for further proceedings on those issues. The judgment is affirmed in all other respects.

In this opinion the other judges concurred.

[1] Because we agree with the defendant's second and fourth claims, and we conclude that the defendant is entitled to a new hearing on all financial and property orders because the improper orders are inextricably interwoven with the mosaic of other financial and property orders that were entered at the time of the final decree, we need not decide the defendant's remaining claims. See *Kovalsick* v. *Kovalsick*, 125 Conn. App. 265, 276, 7 A.3d 924 (2010) (declining to decide plaintiff's claim concerning property distribution after determining that court's order denying alimony award reflected an abuse of discretion).

[2] As stated in footnote 1 of this opinion, we do not reach the defendant's claim that the court abused its discretion in awarding the plaintiff attorney's fees because "the plaintiff has ample liquid assets and there has been no egregious litigation misconduct." Because the issue may arise on remand, we note the principles of law applicable to a determination of whether attorney's fees should be awarded.

General Statutes § 46b-62 (a) "authorizes the trial court to award attorney's fees in a dissolution action when appropriate in light of the 'respective financial abilities' of the parties and the equitable factors listed in [General Statutes] § 46b-82." *Hornung* v. *Hornung*, 323 Conn. 144, 169, 146 A.3d 912 (2016). Our Supreme Court has stated "three broad principles by which

these statutory criteria are to be applied. First, such awards should not be made merely because the obligor has demonstrated an ability to pay. Second, where both parties are financially able to pay their own fees and expenses, they should be permitted to do so. Third, where, because of other orders, the potential obligee has ample liquid funds, an allowance of [attorney's] fees is not justified. . . . A determination of what constitutes ample liquid funds . . . requires . . . an examination of the total assets of the parties at the time the award is made." (Citation omitted; internal quotation marks omitted.) Id., 169–70. "[T]he availability of sufficient cash to pay one's attorney's fees, [however], is not an absolute litmus test . . . . [A] trial court's discretion should be guided so that its decision regarding attorney's fees does not undermine its purpose in making any other financial award." (Internal quotation marks omitted.) Id., 170; see also id., 172 (holding that "[t]he trial court abused its discretion in making the attorney's fees awards because the plaintiff received ample liquid funds as a result of the trial court's judgment, and the trial court's determination that not awarding attorney's fees to the plaintiff would undermine its other awards was unreasonable").

[3] To the extent the defendant argues that the court erred in using his earning capacity rather than his actual earnings because he has not intentionally depressed his earnings, we note that "although financial orders often arise in that context, the court need not find that the [party] wilfully diminished his income in order to consider earning capacity." *Rozsa* v. *Rozsa*, 117 Conn. App. 1, 8, 977 A.2d 722 (2009); see also *Weinstein* v. *Weinstein*, 280 Conn. 764, 772, 911 A.2d 1077 (2007).