******************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.
******************************************

SARAH A. MOYHER *v.* PAUL J. MOYHER III
(AC 41795)

DiPentima, C. J., and Keller and Flynn, Js.

*Syllabus*

The defendant appealed to this court from the judgment of the trial court dissolving his marriage to the plaintiff, and entering certain related financial orders. The trial court determined, referencing the applicable statute (§ 46b-81 (c)), that certain real property constituted marital property subject to equitable distribution. *Held:*

1. The defendant could not prevail on his claim that the trial court improperly found that certain real property located in New Hampshire was a marital asset and improperly awarded the plaintiff 40 percent of its value; the court explicitly referred to the factors in § 46b-81 (c) in determining that the New Hampshire property was marital property, considering the contributions both parties made in designing, building and maintaining the house, and the time spent there by both parties over the course of the marriage, and the court's award of 40 percent of the New Hampshire property to the plaintiff was not an abuse of discretion because the court found that the plaintiff contributed significantly to the finances of the marriage.

2. This court declined to review the defendant's unpreserved claim that the trial court abused its discretion in not allowing him to present evidence regarding an alleged prenuptial agreement between the parties: the trial court stated on the record that the defendant, prior to trial, had withdrawn his clam for enforcement of a prenuptial agreement, and, although, in his brief to this court, the defendant argued that he sought to introduce evidence of a prenuptial agreement, and that, in chambers on the morning of trial, the court stated that it would not allow evidence of a prenuptial agreement to be presented because the defendant was unable to provide a signed agreement, there was nothing in the record to allow this court to review the defendant's claim; no objection was made on the record to the court's statement at the opening of trial that it would not consider evidence of the alleged prenuptial agreement, and the defendant neither offered the agreement as an exhibit for identification purposes nor made any offer of proof.

3. The trial court abused its discretion in ordering the defendant to pay the plaintiff her share of the New Hampshire property within five months of the dissolution judgment as the court did not properly consider the factors in § 46b-81 in making that order; the court noted that the defendant was an accountant but worked only sporadically throughout the marriage, and the court prohibited the defendant from encumbering the property, which prevented him from attempting to obtain a mortgage on the property to pay the judgment; in light of the defendant's lack of employment, assets or other sources of income, the court's order was an abuse of discretion.

Argued February 3—officially released June 23, 2020

*Procedural History*

Action for the dissolution of a marriage, and for other relief, brought to the Superior Court in the judicial district of New London, where the court, *Devine, J.*, rendered judgment dissolving the marriage and granting certain other relief, from which the defendant appealed to this court. *Reversed in part*; *further proceedings.*

*James E. Nealon*, for the appellant (defendant).

*Matthew G. Berger*, with whom was *Lorraine Eckert*, for the appellee (plaintiff).

*Opinion*

DiPENTIMA, C. J. The defendant, Paul J. Moyher III, appeals from the judgment of the trial court dissolving his marriage to the plaintiff, Sarah A. Moyher, and entering related financial orders. On appeal, the defendant claims that the court abused its discretion by (1) finding that certain real property located in New Hampshire was a marital asset and awarding the plaintiff 40 percent of its value, (2) not allowing the defendant to present evidence at trial regarding a prenuptial agreement between the parties, and (3) ordering the defendant to pay the plaintiff her awarded share of the New Hampshire real property, $150,750 plus interest, within five months of the dissolution judgment. We disagree with the defendant's first two claims; however, we agree that the court abused its discretion in ordering the defendant to pay the plaintiff her share of the New Hampshire property within five months of the dissolution judgment. Accordingly, we reverse that part of the judgment of the trial court and remand for further proceedings in accordance with this opinion.

The following facts, as found by the trial court, and procedural history are relevant to this appeal. The parties were married on November 4, 2006, in East Haddam and did not have any children. By complaint dated July 7, 2016, the plaintiff sought a dissolution of the marriage and a fair division of property and debts. The defendant then filed an answer admitting all of the allegations in the plaintiff's complaint and a cross complaint seeking a fair division of the property and debts, alimony and enforcement of the parties' prenuptial agreement.[1]

On September 7, 2017, the court, *Devine, J.*, rendered judgment dissolving the parties' marriage and entered financial orders in a memorandum of decision. The court determined that a house, located near the Canadian border at 218 Spooner Road, Pittsburgh, New Hampshire (New Hampshire property), constituted marital property subject to equitable distribution. This determination is at the center of this appeal.[2]

We begin by setting forth the well settled standard of review. "An appellate court will not disturb a trial court's orders in domestic relations cases unless the court has abused its discretion or it is found that it could not reasonably conclude as it did, based on the facts presented. . . . In determining whether a trial court has abused its broad discretion in domestic relations matters, we allow every reasonable presumption in favor of the correctness of its action. . . . Furthermore, [t]he trial court's findings [of fact] are binding upon this court unless they are clearly erroneous in light of the evidence and the pleadings in the record as a whole. . . . A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it,

the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. (Internal quotation marks omitted.) *Merk-Gould* v. *Gould*, 184 Conn. App. 512, 516–17, 195 A.3d 458 (2018).

I

First, the defendant claims that (1) the trial court's finding that the New Hampshire property was marital property was clearly erroneous and (2) the court's award of 40 percent of the property to the plaintiff was an abuse of discretion. We disagree.

In 2001, prior to the marriage but during his relationship with the plaintiff, "the defendant purchased a parcel of land in New Hampshire intended for snowmobiling. The defendant took out a mortgage to purchase the lot and later a construction mortgage in the amount of $149,000. The plaintiff and the defendant both enjoyed snowmobiling and other activities as evidenced by their purchase of multiple snowmobiles and other winter vehicles. The land was cleared by the plaintiff, the defendant and mutual friends. The house was designed with input from both and a builder friend with [subcontractors performing] the framing and roofing. The parties worked on the floors together [and] the defendant and a friend [performed] the plumbing and electrical work. The plaintiff requested that her name be added to the deed and mortgage but the defendant refused." (Footnote omitted.) The court noted that the plaintiff also spent significant time traveling to the New Hampshire property "from her various places of employment to be with the defendant on the weekends in the winter to cook, clean and enjoy the snowmobiling . . . with the defendant. She worked all week during the year, but traveled to New Hampshire during the winter weekends from Connecticut, Pennsylvania and/ or Massachusetts."

The court further found that the plaintiff made "substantial contributions to the pay down of the New Hampshire lot purchase and mortgage resulting in a total payoff and release by 2012." Indeed, "[a]ll of [the plaintiff's] income went to [the defendant's] bank account to pay triple mortgage payments on the defendant's New Hampshire home and other bills . . . ."

Although a trial court is afforded broad discretion when distributing marital property, it must take into account several statutory factors when making its determination. See *Greco* v. *Greco*, 275 Conn. 348, 354–55, 880 A.2d 872 (2005). These factors are enumerated in General Statutes § 46b-81 (c). Section 46b-81 (c) provides: "In fixing the nature and value of the property, if any, to be assigned, the court, after considering all the evidence presented by each party, shall consider the length of the marriage, the causes for the annulment, dissolution of the marriage or legal separation, the age,

health, station, occupation, amount and sources of income, earning capacity, vocation skills, education, employability, estate, liabilities and needs of each of the parties and the opportunity of each for future acquisition of capital assets and income. The court shall also consider the contribution of each of the parties in the acquisition, preservation or appreciation in value of their respective estates." Although the trial court "need not give every factor equal weight . . . or recite the statutory criteria that it considered in making its decision or make express findings as to each statutory factor, it must take each into account." (Internal quotation marks omitted.) *Greco* v. *Greco*, supra, 275 Conn. 355.

In its memorandum of decision, the court explicitly referred to the factors set forth in § 46b-81(c) in determining that the New Hampshire property was marital property. The court properly considered the contributions, financial and otherwise, that both parties had made in designing, building and maintaining the house. The court particularly noted the substantial financial contributions the plaintiff made that allowed the defendant to make triple payments on his construction mortgage. The court also considered the time spent there by both parties over the course of the marriage. Therefore, the finding that the New Hampshire property was marital property subject to distribution was not clearly erroneous.

Further, the court's award of 40 percent of the New Hampshire property to the plaintiff was not an abuse of discretion. Not only did the court find that the plaintiff had contributed significantly to the planning, funding and maintaining of the New Hampshire property, the court found that the plaintiff had contributed significantly to the finances of the marriage. The court stated that "[t]he plaintiff's contributions of income from 2007 to 2017 totals approximately $593,000. All of her net income from employment deposited into the defendant's checking account has been spent. The plaintiff has contributed substantially more money than the defendant to the marriage debts and expenses. The defendant's employment net income from 2004 to present is dwarfed by that of the plaintiff." Accordingly, we reject the defendant's first claim.

II

Next, the defendant claims that the court abused its discretion by not allowing him to present evidence at trial regarding a prenuptial agreement between the parties, which would have precluded her from receiving any interest in the New Hampshire property. Because this claim was not preserved at trial, we decline to review it.

"Our appellate courts, as a general practice, will not review claims made for the first time on appeal. . . . [A]n appellate court is under no obligation to consider

a claim that is not distinctly raised at the trial level. . . . [B]ecause our review is limited to matters in the record, we [also] will not address issues not decided by the trial court. . . . The purpose of our preservation requirements is to ensure fair notice of a party's claims to both the trial court and opposing parties. . . . These requirements are not simply formalities. They serve to alert the trial court to potential error while there is still time for the court to act. . . . The reason for the rule is obvious: to permit a party to raise a claim on appeal that has not been raised at trial—after it is too late for the trial court or the opposing party to address the claim—would encourage trial by ambuscade, which is unfair to both the trial court and the opposing party." (Internal quotation marks omitted.) *Guddo* v. *Guddo*, 185 Conn. App. 283, 286–87, 196 A.3d 1246 (2018). See Practice Book § 60-5 (providing that appellate court is not bound to consider claim that is not distinctly raised at trial or arising subsequent to trial).

In its memorandum of decision, the court states that "[t]he defendant, prior to the commencement of the trial, withdrew his claim for enforcement of an alleged prenuptial agreement." At the start of trial, the court stated the following on the record: "[An] issue came up about apparently there was a cross complaint filed by the defendant, seeking enforcement of an antenuptial or prenuptial agreement. Counsel have indicated to me that that's not [going to] be raised in the case. I should state for the record that I did read what was purported to be a prenuptial agreement, which apparently was not signed by all of the parties. The court will then as a matter of law, disregard it. And, as a matter of fact, not take it into any consideration in this case." In his brief, the defendant states that he sought to introduce evidence at trial that a prenuptial agreement signed by both parties existed and "that its disappearance under the circumstances presented strongly supported the inference that [the] plaintiff had likely played some role in its disappearance." The defendant further states that in chambers the morning of trial, the court stated that it would not allow evidence of a prenuptial agreement to be presented because the defendant was unable to provide evidence of a signed agreement. Notwithstanding the defendant's argument in his brief, there is nothing in the record that allows us to review this claim. No objection was made on the record to the court's statement at the opening of trial, and the defendant neither offered the agreement as an exhibit for identification purposes nor made any offer of proof. Further, no motion for rectification was filed pursuant to Practice Book § 66-5 to attempt to preserve the discussions in chambers. See *State* v. *McIntyre*, 242 Conn. 318, 332–33, 699 A.2d 911 (1997) (noting that discussions held in chambers that are not reflected on record cannot displace rulings on record). Thus, the defendant failed to properly preserve the claim of the existence of a signed

prenuptial agreement for our review. Accordingly, we decline to review the plaintiff's claim.

III

Finally, the defendant claims that, even if this court affirms the trial court's distribution of the marital property, the court abused its discretion by ordering the defendant to pay the plaintiff her awarded share of the New Hampshire property, $150,750 plus interest, within five months of the dissolution judgment. We agree.

As discussed previously in this opinion, while the court has broad discretion in fashioning financial awards, it must consider certain factors enumerated in § 46b-81 in determining the award. *Greco* v. *Greco*, supra, 275 Conn. 354–55. These factors include "the age, health, station, occupation, amount and sources of income, earning capacity, vocation skills, education, employability, estate, liabilities and needs of each of the parties and the opportunity of each for future acquisition of capital assets and income." General Statutes § 46b-81. Further, although the trial court "need not give every factor equal weight . . . it must take each into account." (Internal quotation marks omitted.) *Greco* v. *Greco*, supra, 355.

Although the court properly considered these factors in determining that the New Hampshire property was marital property and in determining the plaintiff's share, it did not do so when it ordered the defendant to pay the plaintiff her awarded share within five months of the dissolution judgment. It is well settled that "the defendant's ability to pay is a material consideration in formulating financial awards." (Internal quotation marks omitted.) *Pellow* v. *Pellow*, 113 Conn. App. 122, 129, 964 A.2d 1252 (2009).

The court noted that the defendant was an accountant but had worked only sporadically and on a part-time basis throughout the marriage. It further noted that at the time of trial the defendant was unemployed and had not worked since November, 2016. The defendant testified that he planned to find employment after the divorce was completed, but did not state that he had any definite leads on job opportunities. The court found that the defendant's net income from employment from 2004 to the time of trial was "dwarfed by that of the plaintiff" and, at the end of the marriage, the parties had little to no cash reserves or assets, apart from the New Hampshire property.[3] Further, the court prohibited the defendant from encumbering the property, which prevented him from attempting to obtain a mortgage on the property to pay the judgment.

In light of the defendant's lack of employment, assets or other sources of income, including his inability to mortgage the property, and his sporadic employment history, the court's order that the defendant pay the plaintiff's award within five months of the dissolution

judgment was an abuse of discretion. Accordingly, we reverse the trial court's order that the defendant pay the plaintiff her share of the New Hampshire property within five months of the dissolution judgment.

Financial orders "in dissolution proceedings [have been characterized] as resembling a mosaic, in which all the various financial components are carefully interwoven with one another. . . . Accordingly, when an appellate court reverses a trial court judgment on the basis of an improper alimony, property distribution, or child support award, the appellate court's remand typically authorizes the trial court to reconsider all financial orders. . . . We also have stated, however, that [e]very improper order . . . does not necessarily merit a reconsideration of all the trial court's financial orders. A financial order is severable when it is not in any way interdependent with other orders and is not improperly based on a factor that is linked to other factors. . . . In other words, an order is severable if its impropriety does not place the correctness of the other orders in question. . . . Determining whether an order is severable from the other financial orders in a dissolution case is a highly fact bound inquiry." (Internal quotation marks omitted.) *Merk-Gould* v. *Gould*, supra, 184 Conn. App. 523.

In the present case, we conclude that the court's order that the defendant pay the plaintiff's award within five months of the dissolution judgment is severable from the court's other determinations. The other financial orders related to personal property and the court's order that the plaintiff pay the defendant alimony, neither of which were challenged on appeal. The court's determination that the New Hampshire property was marital property is neither interdependent with the other orders nor was it based on a factor linked to other orders. Accordingly, we conclude that the court on remand is limited to its consideration of the payment order.

The judgment is reversed with respect to the order that the defendant pay the plaintiff her portion of the marital property within five months of the dissolution judgment and the case is remanded for further proceedings in accordance with this opinion; the judgment is affirmed in all other respects.

In this opinion the other judges concurred.

[1] Prior to the start of trial, the defendant withdrew his claim for enforcement of an alleged prenuptial agreement.

[2] After this appeal was ready for argument, the defendant filed a motion to open the judgment in the trial court, alleging fraud and mutual mistake. The trial court denied the motion on December 17, 2019, and the defendant appealed that decision; this court subsequently rejected the defendant's appeal. See *Moyher* v. *Moyher*, Docket No. AC 43927 (appeal rejected February 13, 2020).

[3] Both the defendant's father and the plaintiff's mother made significant financial contributions to both parties throughout the marriage. The defendant's father gave cash gifts to both parties and the plaintiff's mother funded a bank account, originally created for the plaintiff's use during college,

which was accessible to both parties. At the time of trial, however, the parties were without any cash reserves, despite these sources of income.

_____